UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DEBORAH SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 4:06-cv-75-WGH-SEB |
| ) | |
| DEARBORN COUNTY, INDIANA, and ) | |
| JOHN DOES 1-10, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ORDER ON PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION**

This matter comes before this United States Magistrate Judge on plaintiff's Motion for Class Certification.[1]  (Docket Nos. 50, 54).  Defendant Dearborn County filed a Response on June 27, 2007.  (Docket No. 56).  Plaintiff filed a Reply on July 11, 2007.  (Docket No. 58).

**Discussion**

Plaintiff Deborah Smith ("Smith") brought this Motion for Class Certification alleging that she and numerous other individuals were subjected to unconstitutional strip searches.  Having examined Smith's motion as well as the law, the court concludes that Smith's motion must be **GRANTED.**

---

[1]The parties consented to Magistrate Judge jurisdiction in this case in their Case Management Plan filed July 27, 2006.  (Docket No. 19).  District Judge Sarah Evans Barker entered an Order of Reference on August 22, 2006.  (Docket No. 21).

A.   **Constitutionality of Strip Searches**

The Fourth Amendment to the United States Constitution, made applicable to the states by way of the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV.  Because the Fourth Amendment only prohibits "unreasonable" searches, this court must determine under what circumstances a strip search conducted by Dearborn County is unreasonable.  As a general rule, a search is unconstitutional unless it is supported by a warrant issued upon probable cause. *New York v. Belton,* 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981).  However, "the exigencies of the situation may sometimes make exemption from the warrant requirement imperative." *Id.* (quoting *McDonald v. U.S.,* 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948)).

One such exception has been applied to strip searches; the Supreme Court has instructed us that, in order to determine if a particular search is reasonable, we must balance the needs "for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979).  Balancing these interests, the Seventh Circuit has acknowledged that "strip searches involving the visual inspection of the anal and genital areas [are] demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and

submission." *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1272 (7th Cir. 1983). While such searches do, in fact, constitute perhaps the greatest intrusion any search could pose, "a detention facility is a unique place fraught with serious security dangers, and officials have a legitimate and substantial need to prevent arrestees from bringing weapons or contraband into such a facility." *Kraushaar v. Flanigan,* 45 F.3d 1040, 1045 (7th Cir. 1995) (internal quotations and citations omitted). In light of these concerns, the strip search of a pretrial detainee may not be conducted unless there is reasonable suspicion that a weapon or contraband is being concealed. *Id.*; *Mary Beth G.,* 723 F.2d at 1273. For suspicion to be "reasonable," there must be specific individualized suspicion attributable to each individual defendant. *Thompson v. County of Cook,* 428 F. Supp.2d 807, 814 (N.D. Ill. 2006); *Calvin v. Sheriff of Will County,* 405 F. Supp.2d 933, 944 (N.D. Ill. 2005) (explaining that "individualized justifications are the antithesis of [a] blanket [strip search] policy . . . ."). "Whether a suspicion is reasonable depends upon such factors as the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record." *Kraushaar,* 45 F.3d at 1045 (internal quotations and citations omitted).

**B.    Background**

Smith was charged with misuse of a credit card and theft in Hamilton County, Ohio. (Affidavit of Deborah Smith "Smith Aff." ¶ 3; *see also* Finding After Court Trial). At a court appearance in Hamilton County on January 18, 2005, Smith was told that she was subject to a warrant issued in Dearborn County, Indiana, for felony fraud charges stemming from the alleged misuse of the same

credit card. (Smith Aff. ¶ 4). Smith was held in the Hamilton County Justice Center ("HCJC") in Cincinnati, Ohio, on the Indiana warrant. (*Id.* ¶ 5). When booked into the HCJC, she was subjected to a pat down search. Smith's pat down search revealed neither weapons nor contraband. (*Id.* ¶ 6). She was in the HCJC from January 18, 2005, to January 21, 2005. (*Id.* ¶ 7).

On January 21, 2005, Smith was transferred from the HCJC to the Dearborn County Jail ("DCJ") by Dearborn County Deputy Sheriffs. She was subjected to a pat down search, was transported directly from one facility to another in restraints, and at no time was she out of sight of corrections officers, either in Hamilton County or Dearborn County. (*Id.* ¶ 8). Upon arrival at the DCJ, Smith was immediately booked in; as part of the booking procedure, she was subjected to a strip search, including a visual body cavity search. (*Id.* ¶¶ 9-10).[2] Smith was required to take off all of her clothes in the presence of a female Deputy Sheriff who made her lift her breasts, spread her legs, bend over and cough. The Deputy Sheriff visually inspected Smith's anal and genital areas. Because she was menstruating at the time of the search, the Deputy Sheriff made Smith remove her sanitary napkin and place it in a plastic bag. (*Id.* ¶ 11). No weapons or drugs were found during the search. (*Id.* ¶ 12).

Smith's strip search was conducted pursuant to Dearborn County policy developed for conducting strip searches. Dearborn County's policy states that

---

[2]Smith was subjected to a strip search despite the fact that, at all times during the transport from the HCJC and during the booking procedure, she was cooperative. (Smith Aff. ¶ 13; plaintiff's Answers to Interrogs. 10(a), 13). And, nothing about her past record suggested concealment of contraband or violent or aggressive behavior. (Answers to Interrog. 10(b)).

individuals charged with non-violent misdemeanors or minor traffic offenses can not be strip searched unless the officer can articulate an individualized reasonable suspicion for the search. (Deposition of David Hall ("Hall Dep.") at 24-25, Ex. 3). Examples of an individualized reasonable suspicion are: (1) the individual was uncooperative or disorderly; (2) the individual had a past record of concealing contraband or violent and/or aggressive behavior; (3) the individual's current charge suggested concealment of contraband or violent and/or aggressive behavior; (4) the individual's current behavior was inappropriate; (5) the individual has a history of inappropriate institutional behavior. (*Id.* at 24-25, Ex. 3). Officers must exercise discretion to effectuate the policy. (*Id.* at 29). Officers are trained on how to exercise the discretion needed to implement the strip search policy for non-violent misdemeanants and traffic offenders. (*Id.* at 25-26). In contrast to the policy for misdemeanor and traffic offenses, Dearborn County's policy was to strip search during intake every individual charged with a felony.[3] (*Id.* at 16, 36, Ex. 2).

To help officers implement the strip search policy, the DCJ utilized a Strip Search Policy and Documentation Form. (Answer to Interrog. No. 7; Hall Dep. at Ex. 4). The form instructed officers how to select inmates for strip searching by imposing the following rule: "Before conducting a strip search of a new intake that has not been sentenced, the following questions will be asked and will determine the necessity of conducting a strip search at intake." *Id.* In order to conclude that

---

[3]The "felony only" strip search policy was not uniformly enforced. (Defendant's Amended Admission No. 2). However, evidence provided by defendant tends to suggest that Smith was subjected to a strip search because she was charged with a felony. (Hall Dep. at Ex. 3).

an individual should be strip searched, an officer had to determine if the current or former charges involved:  (1) any felony offense; (2) any crime/offense involving drugs (except alcohol); (3) any crime/offense involving drug paraphernalia; (4) any crime/offense involving the use of a weapon; or (5) if there was a warrant or body attachment for any of the above.  The officer also had to consider (6) current behavior and (7) whether there was a history of inappropriate institutional behavior (such as possessing or manufacturing of dangerous contraband, or refusal (either verbal or physical) to submit to a clothed search).  The officer also had to note if (8) a clothed search uncovered dangerous contraband or reasonable suspicion of the possession of dangerous contraband.  Finally, the officer could take note of (9) other information that constituted individual reasonable suspicion.  A "yes" to any of the above nine factors resulted in a strip search.  *Id.*

The form was not uniformly utilized.  However, Dearborn County Commander David Hall ("Hall") admitted that even without a completed form, jail personnel could identify what rationale supported an individual's strip search by reviewing information contained in the jail's computer system and inmate files.  (Hall Dep. at 52-58).  Furthermore, Hall testified that the officers document inappropriate behavior that is significant enough to form the basis for a strip search and that the information could be accessed through the jail's computer system.  (*Id.* at 57-58).

Through the DCJ computer system, defendant has maintained records on how it determined to strip search individuals entering the DCJ.  Defendant utilized two programs, referred to as the Spillman program and the EmergiTech program, in order to memorialize the reasoning behind an inmate's strip search.  Utilizing these

two programs, defendant produced redacted information on 1760 individuals with felony charges who went through the DCJ from May 12, 2004, through September 14, 2006. A total of 876 of these individuals (referred to in files 1-877) were subjected to a strip search at intake.[4] The balance were subjected to a pat-down search. (Plaintiff's Motion for Class Certification at Ex. 11).

The DCJ changed computer programs from the Spillman program to the EmergiTech program sometime in the fall of 2004. (Hall Dep. at 33). Records for inmate files 1-167 used the Spillman program. Records for inmate files 168-877 used the EmergiTech program. Under either program, the records provide the following information: (1) the booking date; (2) the current offense, including the Indiana statute citation; (3) whether the current offense is an alcohol or drug offense; (4) whether the crime involved drug paraphernalia or use of a weapon; (5) the names of the booking and search officers; and (6) whether there was a warrant or body attachment for the current charge. The Spillman program records for inmate files 1-167 also show prior charges. Although defendant did not provide the computer printout screens showing prior charges for inmate files 168-877, Hall testified that the EmergiTech program could easily access prior charge information. (Hall Dep. at 57).

Smith alleges that an analysis of this data for inmate files 1-167 (using the Spillman program that printed out prior charges) indicates that 69 individuals (or 41%) were strip searched with no rationale provided in these records for the strip

---

[4]Defendant inadvertently included one individual subjected to a pat-down search.

search beyond the fact that the individual had been charged with a felony. (Affidavit of Jennifer Thompson ("Thompson Aff.") ¶ 3-5).  According to Smith, the records of those 69 individuals contained no evidence that they had been charged with an offense that involved drugs, drug paraphernalia, or a weapon; that they had a warrant or body attachment; that they had previous charges that involved drugs, drug paraphernalia, or a weapon; that there was documentation of any current behavior or history of inappropriate institutional behavior; or that there was other documentation that constituted reasonable suspicion in the computer record.  (*Id.* ¶ 4).[5]

**C.    Class Definition**

Plaintiff brings this suit alleging that she, as well as the rest of the class that she represents, is a pretrial detainee who was charged with a felony.  In light of the relevant authority, defendant was not constitutionally permitted to strip search all pretrial detainees charged with a felony who entered the DCJ.  There must have been specific articulable individualized suspicion that the individual being searched was secreting contraband or a weapon in order to conduct the strip search.  Any individual which the evidence reflects was searched for the sole reason that they were charged with a felony has articulated a claim under the Fourth Amendment that they were subjected to an unreasonable search as a result of the DCJ policy. By searching the Spillman and EmergiTech programs, the court will be able to

---

[5]Because the records provided for inmate files 168-877 do not contain prior conviction information, plaintiff is unable to identify the felony-only strip searches for inmates 168-877 at this time.  However, Hall has testified that this information does exist in the computer system.

determine which individuals were searched even though no specific articulable individualized suspicion was reflected in the records.

Smith has proposed that the class that she represents should consist of "all persons who, during the two years prior to filing of the complaint, were subjected to a strip search during intake at the Dearborn County Jail solely because they were charged with a felony." (Plaintiff's Motion for Class Certification at 9). However, we must be careful not to define the class too broadly to include individuals who have not suffered an injury. *Does v. City of Indianapolis,* 2006 WL 3365672, at *2 (S.D. Ind. 2006). The court concludes that this proposed class is too broad, as it does not specify whether the individual is a pretrial detainee. Because there may be a distinction in the scope of the Fourth Amendment rights between those who have never been convicted of an offense and those who have already been convicted, we conclude that the class definition will instead be: "All pretrial detainees who were subjected to a strip search upon intake into the Dearborn County Jail during the two year period prior to the filing of the Complaint, and for which the records indicate were strip searched solely because they were charged with a felony and despite no specific articulable individualized reasonable suspicion that they were secreting weapons or contraband." This definition will adequately reflect the case law because it will include only pretrial detainees, and because it will include individuals for which the written record provides no specific articulable individualized reasonable suspicion that the individual was secreting weapons or contraband.

**Class Certification**

The decision to certify a class lies within the sound discretion of the court. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998). A class may only be certified if the court finds that the class meets specific criteria set forth in Federal Rules of Civil Procedure 23(a) and (b). Specifically, a class representative may sue on behalf of an entire class of individuals if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED.R.CIV.P. 23(a). Each of these four elements, sometimes more simplistically referred to as numerosity, commonality, typicality, and adequacy of representation, are prerequisites to certification of a class, and failure to meet any one precludes certification of the class. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993).[6] After the four criteria of Rule 23(a) are met, plaintiff must then satisfy one of the conditions of Rule 23(b). Plaintiff, in this instance, has asserted that Rule 23(b)(3) is applicable. That particular section states that class certification is appropriate when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED.R.CIV.P. 23(b)(3).

---

[6]There must be actual, not simply presumed, conformance with Rule 23(a). *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Factors to be considered in this analysis include: (1) whether individual members of the class have an interest in individually controlling a separate action; (2) the extent and nature of any litigation that has already been commenced by a member of the class; (3) whether concentrating all litigation in this particular forum is desirable; and (4) the difficulties likely to be encountered in management of the litigation. *Id.* The court must proceed to apply these principles in determining if class certification should occur.

**A.     Numerosity**

Under Rule 23(a), our first task is to determine if the proposed class is "so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a). There is no concrete number required to satisfy the numerosity requirement. A class as small as 40 members is sufficiently numerous to satisfy the requirement of Rule 23(a). *Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). It is also not crucial to know the exact number of class members; plaintiff need only offer good faith estimates of class size, and the court may make common sense assumptions in order to determine the validity of those estimates. *Lucas v. GC Services L.P.,* 226 F.R.D. 337, 340 (N.D. Ind. 2005).

Here, Smith has conducted an analysis that suggests that there are 69 individuals within the Spillman program who were strip searched even though nothing within the record indicates that there was reasonable suspicion to support the search. Because there is a distinction between prisoners (who have already been convicted) and pretrial detainees (who have not), the court is concerned that some of these individuals might have already been convicted of some other crime

and were not pretrial detainees. Smith did not make this distinction between pretrial detainees and prisoners. However, in addition to the 69 individuals identified from the Spillman program, there are a significant number of individuals whose information was recorded under the EmergiTech program. Defendant argues that it is too speculative to suggest that an analysis of the EmergiTech program will produce similar results to the 41% of Spillman program entries who were allegedly strip searched without reasonable suspicion. The court disagrees. It is reasonable to assume that Smith will easily meet the 40-person threshold using both the Spillman and EmergiTech programs. For these reasons, the court concludes that the numerosity requirement of Rule 23(a) is satisfied.[7]

**B.     Commonality**

In order to certify the class we must also find questions of law and fact common to all members of the class. FED.R.CIV.P. 23(a). Ordinarily, a class can meet the commonality requirement by demonstrating that there is a "common nucleus of operative facts." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). On some occasions, it is important to focus on a defendant's behavior to satisfy the commonality requirement. *In re Bridgestone/Firestone Inc. Tires Products Liability Litigation,* 205 F.R.D. 503, 517 (S.D. Ind. 2001).

---

[7]Smith will need to re-examine the Spillman records and determine which individuals were pretrial detainees. Smith will also need access to the portion of the EmergiTech records that reveals the individual's prior criminal record. After examining all records, Smith will need to provide a final number that she concludes represents all pretrial detainees who were strip searched and for which the records reveal no specific individualized articulable reasonable suspicion.

In this instance, Smith alleges that defendant engaged in the practice of strip searching individuals solely because they were charged with a felony and without any reasonable suspicion to conduct the search. Clearly there were common questions of law and fact in this case. For each pretrial detainee the same question will be: Were they strip searched absent reasonable suspicion? Hence, Smith has met the commonality requirement of Rule 23(a).

**C.     Typicality**

Smith must also demonstrate that her claim is typical of the claims of the other class members. FED.R.CIV.P. 23(a). Typicality exists when plaintiff's claim "arises from the same . . . practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

Defendant argues that Smith's claim is not typical of the rest of the class. Defendant claims that plaintiff was searched after being transferred from another facility, the Hamilton County Justice Center, and for that reason alone, her strip search was constitutional. (See Deposition of Mary Lusby ("Lusby Dep.") at 13-14; Defendant's Answers to Plaintiff's First Set of Interrogs. 10(c)). Defendant cites *Peckham v. Wisconsin Dept. of Corrections* for the proposition that it is constitutional to search any individual upon arrival "at the jail from another facility, whenever a prisoner returns to the jail from a visit with a doctor or from court, [and] whenever a prisoner finishes a contact visit with a non-prisoner." 141 F.3d 694, 695 (7th Cir. 1998). What defendant apparently failed to recognize was that *Peckham* is a case

that examines prisoners' rights, not the constitutional rights of pretrial detainees, as "Peckham [was clearly] serving time for a variety of offenses . . . . " *Id.* at 694. The Seventh Circuit explained that a pretrial detainee "benefit[s] from the Court's more protective treatment of those presumed innocent as compared to the Court's more strict treatment of certain constitutional claims by convicted prisoners." *Id.* at 694 n.1.

Contrary to defendant's assertions, a pretrial detainee may not be searched solely because she is being transferred from another facility. As discussed above, there must be specific articulable individualized reasonable suspicion, *Thompson,* 428 F. Supp.2d at 814, and this type of suspicion is the antithesis of a blanket strip search policy, *Calvin,* 405 F. Supp.2d at 934. Suspicion is reasonable only if based on such factors as the nature of the offense, the person's appearance and conduct, or her prior arrest record. *Kraushaar,* 45 F.3d at 1045. Allowing strip searches for all pretrial detainees who are transferred from another facility, or for all pretrial detainees who return from a court appearance,[8] would allow the exception to swallow the rule.

Since Smith's transfer from another facility did not amount to reasonable suspicion that she was secreting weapons or contraband, her claim is typical of the claims of the rest of the class members. The claims of all members of the class are based on the exact same legal theory, that their strip searches were

---

[8]Defendant seems to infer that Smith's strip search was also constitutional because she had been to a court appearance. (Defendant's Memorandum Opposing Class Certification at 4). The fact that Smith had been to a court appearance does not amount to reasonable suspicion.

unconstitutional because they were not supported by reasonable suspicion. Their claims also arise out of the same DCJ practice of performing strip searches. We, therefore, find that Smith has satisfied the typicality requirement of Rule 23(a).

### D. Adequacy of Representation

Smith must clear one final hurdle to satisfy Rule 23(a) by showing that she will fairly and adequately protect the interests of the class. FED.R.CIV.P. 23(a). "[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n,* 7 F.3d at 598 (internal quotations and citations omitted). We must conclude that a class will not be fairly and adequately represented if it is determined that class members have antagonistic or conflicting claims. *Id.*

In light of Smith's assertion that her counsel can adequately represent the proposed class, and because defendant has raised no objections, the court concludes that her counsel can adequately represent the class. Additionally, there is no evidence that Smith would have difficulty managing the interests of the entire class. The members of the class each have the same "injury" of being strip searched, and Smith's interests do not depart in any manner from the interests of the class. Hence, Smith has demonstrated that she can adequately represent the class, and she has met the fourth and final requirement of Rule 23(a).

### E. Rule 23(b)

Our inquiry does not stop with Rule 23(a). Smith must still prove that at least one portion of Rule 23(b) is satisfied. She has chosen the path that Rule

23(b)(3) prescribes, and by doing so she must show that questions relevant to the class predominate over questions relevant to individual plaintiffs and that the class action is the superior vehicle to sue Dearborn County. FED.R.CIV.P. 23(b)(3).

### 1. Predominance

"Common questions predominate when they 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *Bridgestone/Firestone,* 205 F.R.D. at 520 (quoting 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil* § 1778). Defendant argues that "the proposed members of the class cannot be identified adequately on the record presented by the plaintiff." (Defendant's Memorandum Opposing Class Certification at 6). However, any failure to maintain records certainly should not be held against the pretrial detainees.

Each pretrial detainee's records, whether under the Spillman or EmergiTech program, will include whether the individual has been charged with other previous crimes, the nature of the individual's current charges, and many include addendums with an actual report that addresses other avenues to support the strip search such as the individual's current behavior or appearance or past behavior. This is all of the information necessary to determine if a strip search is supported by specific articulable individualized reasonable suspicion that contraband or weapons are being secreted. The court will be able to examine the Spillman or EmergiTech record for each pretrial detainee. If the record contains none of the traditional evidence that the Seventh Circuit has found supports reasonable suspicion, then that individual will be added to the class. Defendant will then be

required to explain why there was reasonable suspicion for a particular pretrial detainee despite none being apparent from a review of the records. Under this scenario, it is apparent to the court that the class action vehicle will be adequate to resolve this constitutionality issue for each class member.

### 2. Superiority

The court likewise finds that the class action is superior to hundreds of individual lawsuits. There has been no evidence presented that suggests that any other pretrial detainees are pursuing actions against Dearborn County alleging unconstitutional strip searches at the DCJ. Additionally, there has been no evidence that suggests that any particular pretrial detainee experienced an unusually offensive strip search that differed from the other pretrial detainees and would make that individual have an interest in pursuing his or her own action. And, in order to avoid inconsistent results for individual pretrial detainees, this forum will be adequate for the class action suit. Finally, as the EmergiTech and Spillman data has already been compiled, there should be no major difficulties in managing a class action suit.

Because Smith has satisfied all of the requirements in Rules 23(a) and (b)(3) for class certification, the court concludes that certification is warranted and Smith's motion should be granted.

### Conclusion

Plaintiff has satisfied all of the requirements for class certification. Plaintiff's Motion for Class Certification is **GRANTED.**

The class is defined as follows:  All pretrial detainees who were subjected to a strip search upon intake into the Dearborn County Jail during the two year period prior to the filing of the Complaint, and for which the records indicate were strip searched solely because they were charged with a felony and despite no specific articulable individualized reasonable suspicion that they were secreting weapons or contraband.

Lisa T. Meeks is, pursuant to Federal Rules of Civil Procedure 23(c)(1)(B), appointed as class counsel under Rule 23(g).  A **HEARING** will be held before the Magistrate Judge on **MONDAY, OCTOBER 1, 2007,** at 1:00 p.m., New Albany time (EDT), in Room 200, U.S. Courthouse, New Albany, Indiana, to determine how the best notice practicable can be directed to the class members.  Counsel is to be present in person at this hearing.  Not later than three days prior to the hearing, the parties shall file and serve proposed notices to the class.

**SO ORDERED.**

**Dated:** August 28, 2007

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Jeremy Michael Dilts
CARSON BOXBERGER
dilts@carsonboxberger.com

Frank George Kramer
EWBANK & KRAMER
eklaw@embarqmail.com

Edward J. Liptak
CARSON BOXBERGER
liptak@carsonboxberger.com

Lisa Talmadge Meeks
NEWMAN & MEEKS
lisameeks@newman-meeks.com

Robert B. Newman
NEWMAN & MEEKS
robertnewman@newman-meeks.com